NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

For the Seventh Circuit
Chicago, Illinois 60604

Argued October 9, 2013
Decided March 4, 2014

**Before**

DIANE P. WOOD, *Chief Judge*

MICHAEL S. KANNE, *Circuit Judge*

JOHN DANIEL TINDER, *Circuit Judge*

No. 13-1517

UNITED STATES OF AMERICA,
                *Plaintiff-Appellee*,

    *v.*

DEMETRIUS PATTERSON,
               *Defendant-Appellant*.

Appeal from the United States District Court for the Northern District of Illinois, Eastern Division.

No. 11 CR 365-1

Charles R. Norgle, *Judge.*

## O R D E R

Demetrius Patterson pleaded guilty to the crimes of bank robbery, in violation of 18 U.S.C. § 2113(a), and of using and carrying a firearm during the commission of a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A). The district court sentenced him to consecutive terms of 60 months each, for a total of 120 months, and then to five years' supervised release. The court also imposed an obligation to pay restitution in the amount of $15,506, and a $200 special assessment. Patterson's appeal concerns only his

sentence. He argues that the district court failed to recognize its discretion under 18 U.S.C. § 3553(a)(1) to consider his argument in mitigation about the effect that his drug use had on his mental capacity. Our review of the record leaves us unable to say with confidence that the district court weighed the evidence within the proper legal framework. We therefore vacate the sentence and remand for further proceedings.

**I**

We can be brief with our account of the factual background of this case. While walking to his cousin's home, Patterson was approached by two acquaintances who had sold him drugs on prior occasions and knew he was a drug addict. They offered to drive him to buy cigarettes; he accepted and hopped into their van. Once he was inside, they explained to him that they and a third person had planned to rob a bank earlier that day, but that they were forced to abandon the idea when a fourth accomplice dropped out. En route to the third person's home, Patterson ingested heroin. (The source of this heroin is unclear: according to the Presentence Investigation Report, Patterson said that one of the men in the van offered it to him, but before the grand jury he did not specify where or from whom he got it.)

After they picked up their third companion, the men drove to a First Merit Bank branch in Chicago's Bucktown neighborhood. Along the way, the original three renewed their plan to rob a bank. Patterson tried to extricate himself from the scheme by getting out of the vehicle, but when the driver refused to cooperate, Patterson agreed to take part in the robbery. He took a BB gun he found in the van and agreed to take money from the tellers—money that was to be divided equally among the participants. Before arriving at the bank, Patterson snorted another two-tenths of a gram of heroin.

Once the robbery was underway, Patterson played a key role. He vaulted over the tellers' counter and brandished the BB gun while demanding money. One of the men seized more than $15,500, and afterward they all dashed down an alley. Patterson hid some of his clothing under a car and abandoned the BB gun. But he was soon arrested while he was walking down the street.

As we noted, Patterson pleaded guilty to the ensuing charges. At sentencing, he urged the district court to consider his heroin use as a mitigating factor. At his request, the court appointed Dr. Michael Gelbort, a clinical psychologist in private practice, to examine the effect of his drug use and addiction on his mental capacity at the time of the offenses. Dr. Gelbort submitted a report, which the court used to help determine whether Patterson qualified for a reduced sentence under U.S.S.G. § 5K2.13, because of diminished capacity. The report stated that Patterson was "clearly diagnosable" with

polysubstance abuse and depression—conditions that "were present and negatively affecting him" during the robbery. It also concluded that Patterson was apparently "high" on heroin at the time. Dr. Gelbort ended by saying that Patterson's "emotional disturbances and condition" at the time of the crime impaired his ability to reason normally, control his behavior, or conform his behavior to societal standards.

Both the government and Patterson based their sentencing recommendations on Dr. Gelbort's evaluation. Based on the findings about Patterson's substance abuse and depression, the government recommended a sentence at the bottom of the guidelines range (77 to 96 months, based on an offense level of 22 and a criminal history category of V). The government opposed any adjustment under U.S.S.G. § 5K2.13 for diminished capacity. It argued that Patterson's deliberate attempt to leave the van in order to avoid robbing the bank showed that no such reduction was appropriate. Patterson largely agreed with the government's preliminary analysis, but he argued that he deserved a below-guidelines sentence, taking into account both § 5K2.13 and 18 U.S.C. § 3553(a). His emotional disturbances, heroin use, and prolonged drug addiction all combined, he asserted, to impair his capacity and called for a shorter sentence.

The district court rejected Patterson's plea for a diminished-capacity adjustment and sentenced him below the guidelines to 60 months for the bank-robbery charge and the statutory minimum of 60 months for the gun charge. As required by § 924(c), the latter sentence ran consecutively to the first one. In arriving at this conclusion, the judge stated that "the law does not accept the point that self-injection of controlled substances or self-ingestion of alcoholic beverages should be considered some kind of a mitigating factor so long … as the mental state, the mens rea, is established by the evidence in the case." The court found that Patterson's conduct—jumping over the tellers' counter, demanding money from the tellers while waving the BB gun around, and ordering the tellers to the ground—showed that he was in control of himself and had the requisite intent to commit the offenses. It was impressed, however, with Patterson's genuine regret and acceptance of responsibility for his actions, as well as his efforts to deal with his drug addictions while incarcerated and his cooperation with the government's investigation.

## II

On appeal, Patterson argues that the judge failed to recognize his discretion under 18 U.S.C. § 3553(a) to consider Patterson's drug use as a mitigating factor for the sentence. He focuses on the judge's comment to the effect that "the law does not accept … that self-injection of controlled substances … should be considered a mitigating factor so long … as the mental state … is established." This statement, he contends,

reveals the judge's mistaken belief that "the law" barred him from considering Patterson's drug use in mitigation, since Patterson (by his guilty plea) was not contending that he lacked the *mens rea* to commit the offenses. Patterson also argues that the judge erroneously thought that because Patterson did not qualify for a guidelines adjustment under § 5K2.13, the judge had no authority to consider his drug use in mitigation.

The Supreme Court told us in *Gall v. United States* that "a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range." 552 U.S. 38, 49 (2007); reconfirmed in *Peugh v. United States,* 133 S. Ct. 2072, 2080 (2013). Once the court has done so, however, it is not permitted to "presume that the Guidelines range is reasonable. … [It] must make an individualized assessment based on the facts presented." *Gall,* 552 U.S. at 50. Under this structure, even if the sentencing judge concludes that a defendant is not entitled to a "diminished capacity" downward adjustment pursuant to § 5K2.13, he still has discretion under 18 U.S.C. § 3553(a) to consider a defendant's capacity as a mitigating consideration. See *United States v. Conaway*, 713 F.3d 897, 904 (7th Cir. 2013); *United States v. Garthus,* 652 F.3d 715, 718 (7th Cir. 2011); *United States v. Millet,* 510 F.3d 668, 680 (7th Cir. 2007). Indeed, in *Garthus* we noted that the judge is entitled to adopt a sentencing philosophy that is at odds with the guidelines, if she so chooses. 652 F.3d at 718.

It is worth noting that U.S.S.G. § 5K2.13 comes into play only at the sentencing stage, after a conviction. That means that in virtually all cases that reach the sentencing stage, all questions about the defendant's *mens rea* will be resolved; lack of *mens rea* is a reason to acquit. See, *e.g., Dixon v. United States,* 548 U.S. 1, 5–6 (2006); *Staples v. United States,* 511 U.S. 600, 619 (1994). It is also worth reiterating that even if a guideline purports to forbid (as a vestige of the pre-*Booker* era) a downward adjustment on certain grounds (here, substance abuse), the judge is free to look at that information when he reviews the factors outlined in 18 U.S.C. § 3553(a).

Although it is possible that the judge in Patterson's case was neither confusing the *mens rea* necessary for guilt with diminished capacity that might be a characteristic affecting sentencing, see 18 U.S.C. § 3553(a)(1), nor mistakenly attributing too much force to the language in U.S.S.G. § 5K2.13, paragraph 2, factor (1) (forbidding use of this "downward departure" if "the significantly reduced mental capacity was caused by the voluntary use of drugs or other intoxicants"), we cannot be sure that either of these is true given the record before us. We are not sure what "law" the court was thinking of when it said that "the law does not accept the point that self-injection of controlled substances or self-ingestion of alcoholic beverages" might be a mitigating factor. We also do not see why the judge brought *mens rea* into the discussion at this point.

In order to be certain that Patterson's sentence is based on a proper application of 18 U.S.C. § 3553(a), we have concluded that we must vacate this sentence and remand for further proceedings. We have nothing to say about the substantive reasonableness of the sentence Patterson received.

SENTENCE VACATED AND REMANDED.